UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DANNY NAIL,

        Plaintiff,

v.                                        Case No:  6:17-cv-1462-Orl-37GJK

U.S. OFFICE OF PERSONNEL
MANAGEMENT,

        Defendant.

_____/

### FOURTH AMENDED COMPLAINT

Plaintiff, DANNY NAIL ("NAIL"), by and through his undersigned counsel, hereby sues the Defendant, U.S. OFFICE OF PERSONNEL MANAGEMENT ("OPM"), a government agency, and all facts being extant and material hereto, alleges as follows:

### The Parties, Jurisdiction and Venue

1.      This action derives from the Defendant, OPM's, contractual relationship with an insurance carrier, Government Employees Health Association ("GEHA"), pursuant to the Federal Employees Health Benefits Act (or "FEHBA"), 5 U.S.C. §§ 8901-14.

2.      In accordance with 5 C.F.R. § 890.107(c), Plaintiff, NAIL, seeks a court order directing the Defendant, OPM, to require the subject carrier, GEHA, to pay the $25,000.00 of disputed coverage benefits, exclusive of costs, pursuant to the subject insurance policy.

3.      Plaintiff, NAIL, is a resident of Brevard County and is, in all respects, *sui juris*.

4.      Defendant, OPM, is a governmental agency that administers and/or addresses disputed/appealed claims for the FEHBA Program, including, in particular, disputed/appealed claims covered under the GEHA Plan. *See infra* at paragraph 7.

5.      Pursuant to 5 U.S.C. § 1104 and 5 U.S.C. § 1105, the Defendant, OPM, was delegated authority to consider the issues *sub judice*.

6.      This court, therefore, has subject matter jurisdiction and personal jurisdiction over the parties under 5 U.S.C. § 8912.

7.      In this case, GEHA issued Plaintiff, NAIL, a health insurance Policy, Policy No. 424466822TA (the "Plan"), which was effective at all material times discussed herein. The GEHA Plan is attached hereto, in its entirety, as **Exhibit "A"**.

8.      Section 8 of the GEHA Plan creates a non-statutory mandate requiring insureds, like Plaintiff, to submit to "The disputed claims process" if the insured disagrees with a coverage decision.

9.      As more thoroughly discussed below, pursuant to Section 8 of the GEHA Plan, Plaintiff, NAIL, followed and exhausted all administrative remedies in accordance with the agency regulations imposed, concluding with Defendant, OPM, advising NAIL in writing that his disputed claims were not covered, that OPM's decision was its "final administrative review of this Disputed Claim[,]" and that if NAIL "wish[ed] to pursue this matter, [he] now ha[s] the right to litigate against the Office of Personnel Management in Federal Court." **Exhibit "B"**.

10.     Consequently, OPM's final appeal decision was the final decision on this matter, making a lawsuit against OPM now ripe. *See, e.g. Schimsky v. U.S. Office of Pers. Mgmt.*, 403 F. App'x 150, 151 (9th Cir. 2010).

## General Allegations

11.     Within the effective period of the GEHA Plan, Plaintiff, NAIL, was diagnosed with a prostate tumor and localized prostate cancer, requiring removal of the tumor and outer margins.

12.     As a result, on February 4, 2016, while the GEHA Plan was in full force and effect,

Plaintiff, NAIL, submitted a written, pre-authorization request for a prostate **ablation** to eradicate and remove the identified tumor "in a targeted and very precise manner," using Sonablate High Intensity Focused Ultrasound ("HIFU"). *See* **Composite Exhibit "C."**

13.     With the February 4, 2016 correspondence, Nail enclosed a February 2, 2016, "Letter of Medical Necessity," from his treating doctor, Stephen M. Scionti, MD, estimated costs for the outpatient and billing facilities for the "prostate ablation" and "the FDA letter that documents th[e HIFU procedure] approval[,]" wherein the FDA defined the HIFU procedure as:

> **High intensity ultrasound system for prostate tissue ablation.**  A high intensity ultrasound system for prostate tissue *ablation* is a prescription devise that transmits high intensity therapeutic ultrasound (HITU) energy into the prostate to thermally *ablate* a defined, targeted volume of tissue, performed under imaging guidance. *This classification does not include devises that are intended for the treatment of any specific prostate disease* and does not include devices that are intended to ablate non-prostatic tissues/organs.

*Id*. (***Emphasis added***.)

14.     Regarding the FDA approval of HIFU, it is important to note that the FDA placed no restrictions on performing this procedure as is normally done when procedures are considered experimental or investigational. Indeed, as stated by the FDA, *supra*, HIFU can be used to ablate enlarged prostate tissue due to non-cancerous BPH, benign tumors or cancerous tissue or tumors. Thus, the FDA's approval of use for these wide-ranging purposes established a standard of care for removing or ablating prostate tumors (whether cancerous or not).

15.     For his part, Dr. Scionti, a highly credentialed and respected urologist that was formerly head of the Urology Department at New York Hospital and had performed the subject HIFU procedure over the past ten (10) years, also noted, *inter alia*, in his letter the FDA's approval of HIFU "for prostate tissue ablation" and that HIFU was being used in over forty (40) countries worldwide, further explaining:

Page 3

Prostate **ablation** using the Sonablate device is a noninvasive treatment done on an outpatient basis. The state of the art technology utilizes focused ultrasound to **destroy prostate tissue in a targeted and very precise manner**. The ultrasound energy is focused sharply from transducer surface to targeted tissue within the prostate gland. Temperatures are elevated in the targeted tissue up to 90 degree's C within 3 seconds **resulting in tissue destruction**. The therapy consists of placing focused ultrasound lesions side-by-side, in an overlapping manner into the prostate gland until the targeted tissue has been painted with focused ultrasound energy.

*Id*. (**Emphasis added**.)

16.     Dr. Scionti continued that HIFU fit Plaintiff, NAIL's, needs as supported by fifteen (15) years of data and finally provided his telephone number at the end of the letter. *Id*.

17.     On March 25, 2016, at the request of GEHA, Plaintiff provided medical records that included: (1) an October 5, 2015 3T MRI Report; (2) a January 21, 2016 Biopsy Report; (3) a February 15, 2016 Second Opinion, Biopsy Report; (4) a March 17, 2016 PSA Report; and, (5) a March 23, 2016, follow-up, 3T MRI Report. *See* **Composite Exhibit "D"**.

18.     Plaintiff, NAIL, also advised in his March 25, 2016 letter that the HIFU procedure to "ablate" his prostate tumor was scheduled for March 29, 2016, "using the FDA approved Sonablate system." *Id*.

19.     Apparently, also on March 29, 2016, Jennifer Williams, of the GEHA Care Management Department, received a fax from "JoAnne C," a case analyst for the Medical Review Institute of America ("MRIoA"), purporting to find that Plaintiff, NAIL's, HIFU procedure was not approved and/or covered under the GEHA Plan. **Exhibit "E"**[1] Notably, the question posed to JoAnne C for review asked whether preauthorization of HIFU "for prostate cancer" was medically necessary and appropriate. *Id*.

---

[1] As noted *infra* at paragraph 39, OPM's previous filing of what purports to be the <u>entire</u> Administrative Record [DE 44-1] curiously fails to include the cover sheet included in Plaintiff's **Exhibit "E"**, despite the fax data within the Administrative Record, at OPM0090 - OPM0095, showing that the document starts at "PAGE 03/08" and ends at "PAGE 08/08." That is, Plaintiff's **Exhibit "E,"** which includes "PAGE 02/08," is omitted from OPM's filing/record.

20.     However, "PAGE 02/08" (or the page omitted from OPM's filing [DE 44-1]) of the MRIoA evaluation report shows that, **in only sixty (60) minutes**, the MRIoA representative was somehow able to fully analyze all of the following: (1) NAIL's February 4, 2016 submitted, written preapproval request, which attached (2) the FDA approval letter and Dr. Scionti's February 2, 2016 Letter of Medical Necessity; (3) billing information; (4) a March 23, 2015 letter reviewing Sonablate; (5) NAIL's March 25, 2016 letter with attached medical records; (6) an October 5, 2015 MRI report regarding NAIL's prostate; (7) a January 21, 2016 MRI fusion and USG prostate report; (8) a January 21, 2016 prostate, biopsy report; (9) a March 23, 2016 MRI report regarding NAIL's prostate; and, (10) selected language chosen by GEHA to reflect "Plan language". *Id*.

21.     In addition to supposedly reviewing the ten (10) aforementioned materials, **within the same sixty (60) minutes period**, the MRIoA representative's report also reflects that **<u>seven</u>** outdated "References" were allegedly researched, analyzed and relied upon to deny Plaintiff's pre-authorization request for a prostate ablation. *Id*.

22.     And, **again, somehow within the same sixty (60) minutes period**, the MRIoA representative was able to respond to the five (5) specific questions submitted by OPM, finding that NAIL was not approved and/or covered for the HIFU procedure, **<u>and</u>** supposedly conduct a thorough "CONFLICT OF INTEREST" analysis to state, under penalty of perjury, that no conflict exists. *Id*.

23.     Nothing in the MRIoA representative's report shows any consideration of HIFU's FDA approved use for ablation of prostate tumors (whether the tumor is cancerous or not). *Id*.

24.     Thereafter, on March 30, 2016, GEHA denied Plaintiff's pre-authorization for the HIFU procedure, claiming that an "outside consultant" determined the HIFU procedure to not be medically necessary and that there was a "systematic review conclud[ing] that 'current evidence

on high intensity ultrasound use in prostate cancer patients is of low quality, rendering it difficult to draw conclusions about its efficacy. Until results from case series are confirmed in prospective studies, the widespread use of high intensity ultrasound is not supported[,]'" which language was pulled verbatim from the MRIoA evaluation report, *supra*. *See* **Exhibit "F"** Plaintiff, NAIL, was also advised that if he did not agree with the benefits determination, additional information could be submitted within six (6) months for reconsideration.

25.     As shown on the face of GEHA's March 30, 2016 letter, which referenced only "high intensity ultrasound use in prostate cancer patients," GEHA failed to analyze, determine or consider HIFU's intended use to "ablate" prostate tumors or the FDA's approval, which specifically stated that HIFU was not "intended for the treatment of any specific prostate disease[.]" *Supra* at paragraphs 13, 15.

26.     Considering the above facts and upon information and belief, GEHA did not use an "outside consultant" to arrive at this coverage decision; instead, it used an individual (JoAnne C.) associated with MRIoA, which has a long-standing relationship with GEHA, but JoAnne C. did not conduct an independent or thorough analysis about the matter under review before rendering her "opinion", she merely made a determination that fit GEHA's desired result.

27.     Nevertheless, to comply with the six (6) month timeline stated *supra*, as a good faith attempt to reach a resolution and to further support his pre-authorization request, by letter dated May 5, 2016, Plaintiff submitted appeals forms and: (1) reiterated to GEHA why the HIFU procedure was medically necessary for his prostate ablation needs; (2) reminded GEHA that he already provided multiple pathology opinions and medical records confirming the medical necessity of the HIFU procedure; (3) attached documented evidence that rebutted the benefits determination made in the March 30, 2016 letter regarding the aforementioned "systematic

review"; and, *inter alia*, (4) repeated to GEHA that Dr. Scionti, the doctor that performed his FDA approved HIFU procedure, had performed over 1,000 HIFU procedures over the past ten (10) years. *See* **Exhibit "G".**

28.     By letter, dated May 11, 2016, GEHA acknowledged NAIL's appeal, but NAIL later spoke with Jennifer Williams of GEHA, who told NAIL over the telephone that the HIFU procedure was considered experimental and would, therefore, not be covered. **Exhibit "H"**

29.     On May 12, 2016, Plaintiff wrote Ms. Williams of GEHA and provided even more information to GEHA, again meticulously detailing why the HIFU procedure should not be considered experimental and again clarified that "[t]he FDA approved HIFU for the ablation of prostate tissue, and [ ] the ablation of prostate tissue can be done for reasons other than cancer[.]" *See* **Exhibit "I"**. Notably, the information NAIL provided was more recent and widespread than the seven outdated "References" JoAnne C. allegedly researched, analyzed and relied upon.

30.     Subsequently, on May 17, 2016, a different case analyst at MRIoA, Ashley (no last name was provided), corresponded with Jennifer Williams of GEHA, again finding that NAIL's pre-authorization request for the prostate ablation by way of the HIFU procedure was not approved and/or covered under his GEHA Plan stating, in part, "[t]here is no evidence in the medical literature that supports the use of HIFU as treatment of high risk prostate cancer." **Exhibit "J"**.

31.     However, like MRIoA's March 29, 2016 evaluation report showed, the May 17, 2016 letter shows that the question submitted to the second MRIoA representative, Ashley, was whether preauthorization of HIFU "for prostate cancer" was medically necessary and appropriate. *Id*. There was no requested review of HIFU's FDA approved use to ablate prostate tumors (whether cancerous or not). *Id*.

32.     And, the May 17, 2016 evaluation report relied on outdated references and, despite

noting that four (4) of NAIL's letters had been provided for the MRIoA representative's review, the final report reflected no analysis or consideration of the more recent literature, data and FDA's approval of HIFU to ablate prostate tumors that NAIL previously cited and provided. *Id*.

33.     That is, despite the overwhelming amount of literature provided, including the FDA's approval of the HIFU procedure for ablation of tumors (whether cancerous or not), provided to GEHA and the MRIoA analysts, on May 23, 2016, GEHA, again denied Plaintiff's pre-authorization request. This time, GEHA alleged that its "Medical Director and two outside Medical consultants" determined that the HIFU procedure is not supported by credible scientific evidence, is not medically necessary and is not considered consistent with generally accepted standards of medical practice in the United States for "the treatment of prostate cancer". *See* **Exhibit "K"**.

34.     Further, as with every coverage determination before, the May 23, 2016 letter made no reference to or coverage statement regarding NAIL's request for an ablation of his tumor; however, the letter did advise NAIL that if he did "not agree with th[e] benefit determination, [he was] entitled to a review of the claim by the U.S. Office of Personnel Management within 90 days of [GEHA's] affirmation of denial." *Id*.

35.     And, the May 23, 2016 letter referred to pages 104 and 105 of the GEHA Plan but showed no consideration or analysis of the GEHA Plan's coverage for tumor ablations at Section 5, p. 46 of the GEHA Plan. *Id*.

36.     Thus, again, upon information and belief, GEHA, did not use two "outside Medical consultants" to arrive at its coverage decision; instead, it used MRIoA representatives that have long-standing relationships with GEHA whom did not conduct a thorough, independent analysis or analyze all the current literature related to the matter under review before rendering an

"opinion"; they merely made a determination that fit GEHA's desired result.

37.     Indeed, each and every "outside" person involved with the issues *sub judice* considered the HIFU procedure for "the treatment of prostate cancer," not for the ablation of a prostate tumor, which was the actual procedure done. *See* **Exhibit "L"**, or the March 29, 2016 procedure report (showing the procedure as "Prostate Ablation with High Intensity Focused Ultrasound," with no mention of cancer treatment, only that "[t]he targeted area of the prostate gland was treated in its entirety.") In fact, further to this point, no urologists were ever engaged by GEHA to analyze the subject claim; instead, GEHA relied solely on oncologists.

38.     Nevertheless, to comply with the aforementioned appeal deadline, on June 23, 2016, to request assistance in getting GEHA to approve and cover the HIFU procedure, Plaintiff, NAIL, appealed to Defendant, OPM, recounting his prior (and extensive efforts), attaching all of the prior letters and documentation he previously provided and **pointing out in the very first paragraph of his appeal letter that, to deny NAIL coverage for the HIFU procedure, GEHA and the MRIoA analysts ignored clear Plan language, at Section 5(b), p. 46 of the Plan, which unequivocally provides coverage for "operative procedures and removal of tumors"** (like the FDA approved, tumor ablation for which NAIL continuously sought approval). *See* **Composite Exhibit "M".**

39.     To this point, recently, OPM filed what it purports is the entire Administrative Record [DE 44-1], and that filing shows that GEHA **never** provided any MRIoA representative the Plan language at Section 5(b), p. 46 of the Plan; instead, GEHA provided only eight (8) of the Plan's 118 pages (specifically, pages 21, 22, 31, 37, 38, 87, 104 and 105), which pages  provided language to support a denial of HIFU as a cancer treatment exclusion, without allowing the MRIoA representative(s) to independently review the full Plan and/or documentation provided by NAIL

that substantiated HIFU's FDA approval for prostate tumor ablations. *See* **Composite Exhibit "N"** or [DE 44-1], specifically OPM0062 – OPM0070.

40.     Indeed, OPM's cover page for "FEHB Reconsideration File Request and Submittal Sheet" explicitly describes the GEHA Plan pages provided to the reviewers as "Pertinent brochure provision that supports the denial[,]" which shows that GEHA provided only the Plan pages that would lead the reviewers to make a determination that fit GEHA's desired result. *Id*. at OPM0054.

41.     Unaware of the above conduct, at that time, on June 28, 2016, NAIL, followed up regarding his appeal with the Defendant, OPM, to provide additional medical documentation and information as well as the results of his PSA tests, which showed overwhelming, positive results. *See* **Composite Exhibit "O".** Indeed, the historical PSA testing chart – tracking the incredible, post HIFU procedure results – that NAIL included with this correspondence is *a picture that says more than a thousand words*:



42.     Nonetheless, on August 30, 2016, the Defendant, OPM advised that it would not grant Plaintiff, NAIL's appeal and could not "direct the Plan to authorize benefits." *See* **Exhibit "B".** And, like the prior letters sent by GEHA, the Defendant, OPM, stated that an "Independent Physician Consultant" reported that

> *The consensus amongst experts is that this treatment requires additional investigation, therefore it is considered to be experimental/investigational under*

*the plan's definition. The authors of UpToDate state: " ... HIFU has not been compared with standard treatment approaches in randomized trials, nor is it included in guidelines **for the initial management of men with prostate cancer** ... " The National Comprehensive Cancer Network Guidelines state " ... Other emerging local therapies, such as high intensity focused ultrasound (HIFU) ... also warrant further study ... "*

*Id*. (**Emphasis added**.)

43.     Defendant, OPM, also stated at the end of the August 30, 2016 letter that NAIL's disputed claims were not covered, that OPM's decision was its "final administrative review of this Disputed Claim[,]" and that if NAIL "wish[ed] to pursue this matter, [he] now ha[s] the right to litigate against the Office of Personnel Management in Federal Court." *Id*.

44.     However, Defendant, OPM, did not provide any documents to substantiate its position or the quoted language, which quote curiously used multiple ellipses to create the illusion of an assertion not actually made. *Id*. Likewise, OPM – as with every determination before it – offered no explanation, analysis or consideration of HIFU's FDA approved use for prostate tumor ablations. Conversely, that was ignored from beginning to end.

45.     And, OPM's recent filing [DE 44-1], shows that OPM did not use an "Independent Physician Consultant" to assist in this coverage decision; it provided an individual physician reviewer incomplete information to reach the result it desired. *See, e.g.* **Composite Exhibit "N"** (showing at OPM0106 that, *inter alia*, the GEHA Plan language at Section 5(b), p. 46 was <u>never</u> provided (only pages 104 and 105 were), that NAIL's June 23, 2016 letter was provided <u>without</u> all the enclosures, which included the FDA approval letter of HIFU's use for prostate tumor ablations and the two (2) pages of research citations to ten (10) "Peer Reviewed Journal Articles" and, at OPM0110, that no review was requested for the "surgery" NAIL requested to ablate his prostate tumor).

46.     And, like GEHA *supra*, OPM never engaged or sought an opinion from a urologist to review the issues *sub judice*; instead, oncologists were the only doctors solicited.

47.     Thus, upon information and belief, this "Independent Physician Consultant": (1) has a long-standing relationship with OPM; (2) conferred with OPM about the matter under review before rendering the alleged "report"; and, (3) has been paid a considerable amount of money by OPM to provide other coverage opinions/denials pursuant to other insured's policies.

48.     Notwithstanding OPM's unrelenting position and refusal to consider the FDA approved HIFU procedure for prostate tumor ablations, on March 8, 2017, NAIL had an MRI of the treated area, which confirmed that the tumor was successfully eradicated and that his PSA levels remain low. Likewise, among other things, the ablation of NAIL's prostate tumor has bettered NAIL's urinary functions.

49.     Based upon the FDA approval of the HIFU procedure, which occurred prior to the Plaintiff's surgery, Medicare also approved the HIFU procedure.

50.     In fact, as recently as September 18, 2017, Plaintiff, NAIL, was advised during an appointment with his treating physician that the ablation of the subject tumor was certainly successful because the tumor is gone.

51.     This reality reiterates, once again, the lack of merit to GEHA's and Defendant, OPM's, aforementioned position and denials, without regard to HIFU's FDA approved use to eradicate and ablate prostate tumors in a precise and targeted manor (whether cancerous or not).

52.     As a result of GEHA's continued denial/coverage decision and Defendant, OPM's, "final administrative review" decision, Plaintiff has personally been exposed to out-of-pocket costs of $25,000.00 for the HIFU procedure, which he personally paid.

53.     However, in accordance with 5 C.F.R. § 890.107(c), Defendant, OPM, should be

directed, by court order, to require the subject carrier, GEHA, to pay the $25,000.00 of disputed coverage benefits pursuant to the GEHA Plan so that NAIL can be reimbursed his out-of-pocket costs.

54.     Plaintiff, NAIL, has been forced to retain the services of the undersigned counsel for purposes of bringing this action and is obligated to pay reasonable attorneys' fees and costs thereon.

55.     Plaintiff, NAIL, has satisfied all conditions precedent to bringing this suit as he has timely complied with all non-statutory mandates pursuant to the "The disputed claims process" within the GEHA Plan and by timely appealing GEHA's denial to the Defendant, OPM, which upheld GEHA's benefits denial as a "final administrative review of this Disputed Claim[,]" or all such conditions have been waived or excused due to GEHA's and/or OPM's conduct.

**COUNT I – PLAINTIFF'S PRAYER FOR A COURT ORDER DIRECTING THE DEFENDANT, OPM, TO REQUIRE GEHA TO PAY THE DISPUTED COVERAGE BENEFITS PURSUANT TO 5 C.F.R. § 890.107(c)**

Plaintiff, DANNY NAIL, hereby adopts, affirms and realleges each and every allegation set forth in Paragraphs 1 through 55 and further alleges:

56.     This is an action seeking a court order, pursuant to 5 C.F.R. § 890.107(c), directing the Defendant, OPM, to require the subject carrier, GEHA, to pay the $25,000 of disputed coverage benefits, exclusive of costs, pursuant to the GEHA Plan.

57.     Plaintiff, DANNY NAIL, individually, contends that Defendant, OPM (and GEHA before it), unreasonably failed to consider <u>all</u> relevant factors related to Plaintiff, NAIL's, preauthorization request and, ultimate, appeal because OPM (and GEHA before it) <u>never</u> reviewed the plain GEHA Plan language at Section 5(b), page 46, which provides coverage for "operative procedures and removal of tumors" (like NAIL's FDA approved tumor ablation now at issue) and

<u>never</u> sought the opinion of a urologist to opine on whether the ablation of NAIL's prostate tumor was covered under the GEHA Plan (irrespective of whether the tumor was cancerous).

58.     Instead, OPM (and GEHA before it), considered only whether the subject HIFU procedure was covered under a different section of the policy for treatment of "cancer," engaging only oncologists, all of whom opined – in response to a request to review the preauthorization request for cancer treatment – that the HIFU procedure was experimental and investigational for treatment of cancer.

59.     Further, despite being provided a direct telephone number and being advised that he had performed over 1,000 HIFU procedures in the past ten (10) years, OPM (and GEHA before it) <u>never</u> contacted Plaintiff, NAIL's, highly credentialed and respected urologist, Dr. Stephen M. Scionti, to inquire as to his Letter of Medical Necessity, which stated that NAIL needed to be treated with the HIFU procedure to eradicate his prostate tumor, or to discuss the fifteen (15) years of data regarding HIFU's use for eradication of prostate tumors.

60.     Likewise, OPM (and GEHA before it) ignored and/or failed to consider more recent research and ten (10) "Peer Reviewed Journal Articles" that Plaintiff, NAIL, enclosed with his June 23, 2016 appeal letter; instead, OPM (and GEHA before it) relied on outdated sources.

61.     Consequently, OPM has failed to articulate a rational connection to its coverage decision/denial, and its action should be set aside because it <u>entirely</u> failed to consider an important aspect of the subject preauthorization request, and its denial explanations and coverage decision runs counter to the evidence that was before it – especially the unambiguous FDA approval of the HIFU procedure, which specifically stated in its procedure definition that its approval of HIFU was not "intended for the treatment of any specific prostate disease[.]" *See supra* at paragraph 13.

62.     In that regard, the Administrative Procedure Act ("APA") provides that "the

reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action" and instructs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. §§ 706 and 706(2)(A).

63.      "[T]he arbitrary and capricious standard focuses on the rationality of the agency's decision-making process rather than on the rationality of the actual decision." *Harrison v. Ocean Bank*, No. 10-23138-CIV, 2011 WL 2607086, at *4 (S.D. Fla. June 30, 2011), aff'd, 614 F. App'x 429 (11th Cir. 2015) (citing *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir.1994):

> The duty of a court reviewing agency action under the "arbitrary or capricious" standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 [103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443] (1983). ***In reviewing the agency's explanation, the reviewing court must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment.*** *Id.* (citing Overton Park [v. Volpe], 401 U.S. [402] at 416 [91 S.Ct. 814 at 823-24, 28 L.Ed.2d 136] [ (1971)]. ***Agency action will be set aside if the agency*** relied on factors which Congress has not intended for it to consider, ***entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise***. *Motor Vehicle Mfrs.*, 463 U.S. at 43, 103 S.Ct. at 2867.

**(*Emphasis added*.)**

64.      Here, and as noted *supra*, OPM (and GEHA before it) <u>never</u> considered whether Plaintiff, NAIL's, FDA approved HIFU procedure to ablate prostate tumors was covered under Section 5(b), p. 46, of the GEHA Plan, never engaged a urologist to inquire into the issue *sub judice*, ignored and/or entirely failed to consider the most up-to-date resources, peer reviewed

journal articles and medical literature regarding the FDA approval of HIFU to ablate prostate tumors (whether cancerous or not) and, *inter alia* alleged herein, never contacted NAIL's treating doctor, Dr. Scionti, despite his vast experience using the HIFU procedure.

65.    Indeed, OPM's recent filing of the Administrative Record [DE 44-1] (or **Composite Exhibit "N"** hereto) shows that Section 5(b), p. 46, was <u>never</u> provided or contemplated in NAIL's subject appeal, even though NAIL's appeal letter, **in the very first paragraph**, stated: "I respectfully appeal GEHA's decision not to cover my prostate tumor ablation. As provided for in Section 5(b), p. 46 of their 2016 Health Benefit Plan, operative procedures and removal of tumors are cited as covered."

66.    Moreover, OPM's recent filing of what it purports is the entire Administrative Record curiously omits the cover sheet included in Plaintiff's **Exhibit "E"** (or fax "PAGE 02/08"), that preceded the "JoAnne C," March 29, 2016, denial report, which memorialized that the subject MRIoA case analyst spent only sixty (60) minutes to find that Plaintiff, NAIL's, HIFU procedure was allegedly not approved and/or covered under the GEHA Plan. *Cf*. **Exhibit "E"** with **Composite Exhibit "N"** (showing the fax data within the Administrative Record, at OPM0090 - OPM0095, starts at "PAGE 03/08" and ends at "PAGE 08/08.")

67.    Conversely, OPM's recent filing of the Administrative Record **confirms** that only eight (8) of the  Plan's 118 pages (specifically, pages 21, 22, 31, 37, 38, 87, 104 and 105) were evaluated so limited Plan language could be used to support a denial of HIFU as a cancer treatment exclusion and create a coverage determination that fit GEHA's desired result, a reality explicitly memorialized by OPM's cover page for "FEHB Reconsideration File Request and Submittal Sheet," which described the provided GEHA Plan pages given to the reviewers as "Pertinent brochure provision that supports the denial[.]" *Id*. at OPM0054

68.     As a result, by virtue of the conduct described above, the subject OPM appeal denial/finding/conclusion should be held unlawful and set aside as arbitrary, capricious, an abuse of discretion and/or otherwise not in accordance with law.

WHEREFORE, the Plaintiff, DANNY NAIL, seeks a court order directing the Defendant, OPM, to require the subject carrier, GEHA, to pay the $25,000.00 of disputed coverage benefits pursuant to the GEHA Plan, costs and attorneys' fees and demands a trial by jury of all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been served via CM/ECF on this 29th day of May 2018, on W. STEPHEN MULDROW, Acting United States Attorney, Ralph E. Hopkins, Esq., Assistant United States Attorney, 400 W. Washington Street, Suite 3100, Ralph.Hopkins@usdoj.gov.

LIGGIO LAW, P.A.
1615 Forum Place
Suite 3B, The Barristers Building
West Palm Beach, FL  33401
(561) 616-3333
(561) 616-3266 FAX
gstahl@liggiolaw.com
jliggio@liggiolaw.com
Attorneys for Plaintiff

By: ___/s/Geoff S. Stahl_____
        GEOFF S. STAHL, ESQ.
        Florida Bar No: 89240
        JEFFREY M. LIGGIO
        Florida Bar No. 357741