UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DANNY NAIL,

    Plaintiff,

v.                                                          Case No. 6:17-cv-1462-Orl-37GJK

U.S. OFFICE OF PERSONNEL
MANAGEMENT,

    Defendant.

## ORDER

Before the Court is Defendant U.S. Office of Personnel Management's ("**OPM**") Motion for Summary Judgment. (Doc. 62 ("**Motion**").) Plaintiff Danny Nail ("**Nail**") responded (Doc. 65), and OPM replied (Doc. 68). On review, the Motion is due to be granted.

## I.    BACKGROUND[1]

This case arises from an insurance company's denial of coverage for a medical procedure. (*See* Doc. 59 ("**Operative Complaint**").) Nail, a retired NASA engineer, was diagnosed with a prostate tumor and localized prostate cancer and sought insurance coverage for prostate ablation. (Doc. 59, ¶ 11; Doc. 59-3, p. 1; Doc. 59-7, p. 4.) At all relevant times, Nail was enrolled in the Federal Employee Health Benefits Program

---

[1] The record in this case is undisputed. Nail points out that OPM's record omits the cover sheet to a fax sent to GEHA (*see* Doc. 65, p. 10; *see also* Doc. 62-1, pp. 90–96), but the parties do not challenge any of the correspondence or other relevant documents.

("**FEHB Program**") and had a health insurance policy with Government Employees Health Association ("**GEHA**"). (Doc. 59, ¶¶ 1, 4, 7.) OPM is the government agency that administers claims under the Federal Employee Health Benefits Act ("**FEHBA**"), which includes claims covered under the GEHA plan. *See* 5 U.S.C. §§ 8901–14. GEHA denied coverage for the procedure. (*See* Docs. 59-6; 59-11.) So Nail appealed to OPM, who also denied coverage. (*See* Docs. 59-2; 59-13.) At issue now is OPM's decision to deny coverage. (*See* Docs. 62, 65, 68.) The Court outlines the FEHB Program and GEHA policy before turning to Nail's coverage dispute.

### A.  Federal Employee Health Benefits Program

Under the Federal Employees Health Benefit Act ("**FEHBA**") Congress delegated authority to OPM to interpret whether an individual's case is covered by the contracted carrier and to decide the benefits and exclusions of the coverage as OPM "considers necessary or desirable." *See* 5 U.S.C. § 8902. The FEHBA also requires that enrollees be provided with a plan brochure outlining the plan's "(1) services or benefits, including maximums, limitations, and exclusions; . . . (2) procedure for obtaining benefits; and (3) principal provisions of the plan affecting the enrollee." 5 U.S.C. § 8907(b).

Congress mandated that every FEHBA contract require the FEHBA carrier to provide coverage for healthcare services if OPM determines that a covered individual may have coverage under the contract. 5 U.S.C. § 8902(j). OPM established an administrative procedure for resolving disputed claims for benefits between a carrier and a covered individual. *See* 5 C.F.R. § 890.105. To dispute a denial of coverage, the covered

individual may first submit a request for reconsideration to the carrier. 5 C.F.R. § 890.105(a). If the denial is affirmed, the claimant may then appeal the decision to OPM. *Id.* If OPM denies coverage, then the claimant may appeal that decision to a federal district court. *Id.* That action must be brought against OPM, not the carrier, and the requested relief "shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107.

**B.  Nail's Insurance Policy**

GEHA's plan brochure explains how to obtain coverage, the covered benefits, and the disputed claims process. (Doc. 59-1 ("**Plan Brochure**").) Relevant here, Section 5(b) provides coverage for surgical procedures and, specifically, the "[r]emoval of tumors." (*Id.* at 48.) But the Section 5(b) benefits are "subject to the definitions, limitations, and exclusions in this brochure and are payable only when [GEHA] determine[s] they are medically necessary." (*Id.*) The Plan Brochure defines medically necessary as:

> Services, drugs, supplies or equipment provided by a hospital or covered provider of the health care services that the Plan determines:
> - Are appropriate to diagnose or treat the patient's condition, illness or injury;
> - Are consistent with **generally accepted standards of medical practice in the United States**.
>   - Generally accepted standards of medical practice are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, national physician specialty society recommendations and the views of medical practitioners practicing in relevant clinical

> areas, and any other relevant factors;
> - Are not primarily for the personal comfort or convenience of the patient, the family, or the provider;
> - Are not a part of or associated with the scholastic education or vocational training of the patient; or
> - In the case of impatient care, cannot be provided safely on an outpatient basis.
>
> The fact that a covered provider has prescribed, recommended, or approved a service, supply, drug or equipment does not, in itself, make it medically necessary.

(*Id.* at 107.) And it provides that "[e]xperimental or investigational procedures, treatments, drugs or devices" will not be covered. (*Id.* at 89.) The Plan Brochure, expounds:

> A medical treatment or procedure, or a drug, device, of biological product is experimental or investigational if: . . . reliable evidence shows that the consensus among experts regarding the drug, device, or biological product or medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, its efficacy, or its efficacy as compared with the standard means of treatment or diagnosis.

(*Id.* at 106.) Further, it provides that certain procedures require prior approval or pre-authorization. (*Id.* at 24.)

### C. Nail's Coverage Dispute

After receiving his cancer diagnosis, Nail engaged in independent research and weighed his treatment options. (*See* Doc. 59-3; *see also* Docs. 59-7, 59-9, 59-13.) Nail selected Sonablate High Intensity Focused Ultrasound ("**HIFU**") prostate tissue ablation to treat his prostate cancer. (*See* Doc. 59-3, pp. 1–2.) As required by the Plan Brochure, Nail submitted a request for pre-authorization of coverage for his treatment to GEHA on

- 4 -

February 4, 2015. (*Id.*) While the procedure is not explicitly covered, he explained in his request he preferred HIFU treatment because "the specific condition of [his] prostate cancer allows [him] to qualify for this less invasive procedure." (*Id.* at 1.) With the request, Nail attached: (1) a February 2, 2016 "Letter of Medical Necessity" from his treating physician, Stephen M. Scionti, MD ("**Dr. Scionti**"); (2) billing information; and (3) the Federal Drug Administration ("**FDA**") letter approving HIFU. (*Id.* at 2–7.) The FDA described HIFU as:

> **High intensity ultrasound system for prostate tissue ablation**. A high intensity ultrasound system for prostate tissue ablation is a prescription device that transmits high intensity therapeutic ultrasound (HITU) energy into the prostate to thermally ablate a defined, targeted volume of tissue, performed under imaging guidance. This classification does not include devices that are intended for the treatment of any specific prostate disease and does not include devices that are intended to ablate non-prostatic tissues/organs.

(*Id.* at 4.)

After receiving Nail's request for pre-authorization of coverage, GEHA requested additional information. (*See* Doc. 59-4.) On March 25, 2016, Nail sent GEHA additional medical records and a letter advising that he was scheduled to undergo the HIFU procedure on March 29, 2016. (*Id.* at 1.) He explained that the procedure "will ablate the cancerous tumor only and spare the prostate using the FDA approved Sonablate system." (*Id.*) As part of its coverage evaluation process, GEHA sought and received a report from a board-certified independent medical reviewer at the Medical Review Institute of America, Inc. ("**MRIoA**"). (Doc. 59-5, p. 6.) Evaluating whether the Sonablate HIFU

procedure is medically necessary and appropriate for Nail's treatment, the reviewer concluded that the Sonablate HIFU procedure was not medically necessary and was considered experimental or investigational to treat localized prostate cancer. (*Id.* at 5.) With that, on March 30, 2016, GEHA informed Nail that coverage for his HIFU procedure would be denied as not medically necessary under the Plan Brochure. (Doc. 59-6; *see* Doc. 59-1, p. 107.) GEHA advised that if Nail disagreed, he could submit additional information within six months for reconsideration. (Doc. 59-6, p. 2.)

On May 5, 2016, Nail submitted a request for reconsideration, asserting that the HIFU procedure was medically necessary and particularly effective for him because he had aggressive localized prostate cancer. (Doc. 59-7, pp. 1, 4.) In support, he included additional evidence from doctors and studies outside the United States supporting the HIFU treatment. (*Id.* at 2–3.) On May 11, 2016, GEHA acknowledged receipt of Nail's latest letter and informally told him by phone that the HIFU treatment was considered experimental and would not be covered. (Doc. 59-8.)

Persisting, Nail submitted another letter to GEHA on May 12, 2016, explaining that "[t]he FDA approved HIFU for the ablation of prostate tissue last year, and even though the ablation of prostate tissue can be done for reasons other than cancer, the most common use of HIFU prostate treatment is for cancer." (Doc. 59-9, p. 2.) In reviewing Nail's reconsideration request, GEHA obtained another independent medical review from MRIoA, this time from David Masiello, MD ("**Dr. Masiello**"), an oncologist. (Doc. 59-10.) Dr. Masiello concluded that the Sonablate HIFU treatment "is not medically

necessary and is not appropriate" and "is experimental or investigational" to treat prostate cancer. (*Id.* at 2.)

On May 23, 2016, GEHA formally informed Nail of the denial of his pre-authorization request. (Doc. 59-11.) Specifically, GEHA explained that its medical director and two outside medical consultants concluded that his Sonablate HIFU treatment "would not be considered medically necessary" and was experimental because it was not supported by scientific evidence and professional guidelines. (*Id.* at 2.) GEHA advised Nail that if he disagreed with the determination, he could seek review of the claim by OPM within ninety days. (*Id.*)

Dissatisfied with GEHA's conclusion, Nail appealed to OPM on June 23, 2016. (Doc. 59-13.) Nail asserted that Section 5(b) of the Plan Brochure explicitly provides coverage for "operative procedures and removal of tumors." (*Id.* at 1.) Nail also recounted the events and explained that his thorough study of potential treatment options revealed that at least some medical experts believe sufficient scientific evidence supports HIFU for cancer treatment. (*Id.* at 4–6.) And on June 28, 2016, Nail provided OPM with evidence that his HIFU treatment succeeded. (Doc. 59-15.)

Following review of his appeal and the administrative record,[2] OPM informed Nail it could not direct GEHA "to authorize benefits" because his treatment was not covered. (Doc. 59-2, p. 1.) OPM explained that Nail's medical records were forwarded to

---

[2] OPM received the administrative record for its consideration when evaluating Nail's claim. (*See* Doc. 62-1.) The record contains a small portion of the Plan Brochure, including Section 5(a) not 5(b). (*See id.* at 63–71.)

an independent physician consultant, board-certified in Medical Oncology, who reported:

> The consensus amongst experts is that this treatment requires additional investigation, therefore it is considered to be experimental/investigational under the plan's definition. The authors of UpToDate state: ". . . HIFU has not been compared with standard treatment approaches in randomized trials, nor is it included in guidelines for the initial management of men with prostate cancer . . . " The National Comprehensive Cancer Network Guidelines state " . . . Other emerging local therapies, such as high intensity focused ultrasound (HIFU) . . . also warrant further study . . ."

(*Id.*) OPM concluded that because the independent physician found that HIFU required "further study," the procedure was experimental or investigational under the Plan Brochure. (*Id.*) OPM advised Nail that if he wished to pursue this matter further, he could initiate litigation against OPM in federal court. (*Id.* at 2).

### D. Instant Action

On July 7, 2017, Nail initiated the instant action in state court, seeking review of its denial of coverage. (*See* Doc. 2.) GEHA removed the action here under the FEHBA. (Doc. 1, ¶ 15.) Following multiple dismissals (*see* Docs. 29, 31, 32, 58), Nail filed the Operative Complaint against OPM, requesting the Court direct OPM to require GEHA to pay the disputed coverage benefits under 5 C.F.R. § 890.107(c) (Doc. 59, ¶¶ 56–68). Now, OPM moves for summary judgment. (Doc. 62.) Briefing complete (Docs. 65, 68), the matter is ripe.

## II.  LEGAL STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On issues for which the movant would bear the burden of proof it must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable fact finder could find for the nonmoving party on the essential elements of its claims. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991)).

On issues for which the nonmovant would bear the burden of proof the movant has two options: (1) it may simply point out an absence of evidence to support the nonmoving party's case; or (2) it may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Four Parcels*, 941 F.2d at 1438 (citing *Celotex Corp.*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), so that "when

conflicts arise between the facts evidenced by the parties, [the court] credit[s] the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). Even so, "[the] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592-94 (1986)). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

### III. ANALYSIS

OPM argues that summary judgment is warranted because its final decision denying coverage was based on careful consideration of the evidence and it articulated a rational connection between the facts and the determination. (Doc. 62, p. 2.) Nail opposes, contending that OPM never properly analyzed his request for coverage and OPM's decision should be set aside as arbitrary and capricious and an abuse of discretion. (Doc. 65, p. 1.) The Court agrees with OPM.

#### A. Arbitrary and Capricious Standard of Review

A district court reviews OPM's actions taken under the FEHBA under the Administrative Procedure Act ("**APA**"). 5 U.S.C. §§ 701, 706; *see also Tackitt v. Prudential Ins. Co. of Am.*, 758 F.2d 1572, 1575 (11th Cir. 1985). "Under the APA, an agency action, finding, or conclusion can be set aside where it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or is 'unsupported by substantial

evidence.'" *Mendoza v. Sec'y Dep't of Homeland Sec.*, 851 F.3d 1348, 1352 (quoting 5 U.S.C. § 706(2)(A), (E)). The arbitrary and capricious standard is "exceedingly deferential." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) (citation omitted). "[A] reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42. (1983). So, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Id.* at 43. But the agency must review the relevant materials and satisfactorily explain its decision, including a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). Courts must then "consider whether the decision was based on a consideration of the relevant factors and whether there has been clear error of judgment." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 281(1974) (citation omitted).

An action may be considered arbitrary and capricious where:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009) (quoting *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007)). The reviewing court "may not supply a reasoned basis for the agency's action that

the agency itself has not given," but the court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle*, 463 U.S. at 43 (first quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); then quoting *Bowman Transp.*, 419 U.S. at 286).

### B. Consideration of Relevant Factors and Evidence

First, the Court considers whether OPM considered the relevant factors and evidence in reaching its coverage decision. In evaluating Nail's coverage claim, OPM considered: (1) the Plan Brochure language; (2) the correspondence between Nail and GEHA; (3) Nail's medical records; (4) the opinions of GEHA's independent medical reviewers; and (5) the opinion of OPM's independent medical reviewer. (*See* Docs. 59-2; 59-14.) OPM contends that its decision was based on a careful consideration of the evidence and its determination was not arbitrary and capricious. (Doc. 62, pp. 10–15.) In opposition, Nail argues that OPM failed to consider a critical aspect of his claim by failing to consider his request for coverage under Section 5(b) of the Plan Brochure and ignoring evidence that ran contrary to OPM's ultimate coverage decision. (Doc. 65, pp. 1, 12–15.) On review, the Court finds that OPM considered the pertinent factors and evidence.

Nail argues that OPM's decision should be set aside as arbitrary and capricious because the plain language of Section 5(b) of the Plan Brochure supports coverage for his tumor removal procedure. (Doc. 65, p .1; *see also* Doc. 59-1.) But Nail's reading of the Plan Brochure is incorrect.[3] Section 5(b) of the Plan Brochure identifies tumor removal as a

---

[3] To the extent Nail argues that the Plan Brochure language is ambiguous, the

covered benefit, but limits those benefits "subject to the definitions, limitations, and exclusions in this brochure." (Doc. 59-1, p. 48.) OPM did not confine its review of Nail's coverage claim to Section 5(b), but rather, properly considered whether the requested procedure was subject to any exclusions or limitations described in the Plan Brochure.[4] Specifically, OPM considered whether the HIFU tumor ablation procedure was excluded from coverage because it was not medically necessary or was experimental. (*See* Doc. 59-2; *see also* Doc. 59-1, pp. 89, 106–107; Doc. 59-14, p. 68.)

Nail's correspondence reveals that he sought a Sonablate HIFU tumor ablation to treat his prostate cancer. (*See, e.g.*, Doc. 59-3, pp. 1–2.) Nail acknowledged that other cancer treatments, such as radiation therapy, have similar results, but maintained that the HIFU procedure was medically necessary for him. (Doc. 59-7, p. 1.) Further, Nail conceded that "some medical experts are divided on the use of HIFU for prostate cancer." (Doc. 59-9, p. 2.) GEHA obtained two independent medical opinions examining whether

---

Court is unpersuaded. (Doc. 62, pp. 13–15.) Further, even assuming Nail is correct, the language that he contends is ambiguous was not relied upon by OPM in reaching its decision—OPM relied on the definition of an experimental treatment or procedure not an experimental drug or device. (*Compare* Doc. 59-2, *with* Doc. 59-1, p. 106.) The former does not include the language Nail contends is improper. (*See* Doc. 59-1, pp. 106–107.) Thus, Nail's argument fails.

[4] The Court is similarly unpersuaded by Nail's argument that OPM failed to consider a critical aspect of his claim because it did not provide Section 5(b) of the Plan Brochure to anyone analyzing his claim. (Doc. 65, pp. 1, 9–11.) Although Nail correctly points out that OPM's administrative record contains only Section 5(a), and not 5(b), of the Plan Brochure, that is a harmless error because both sections contain the same limiting language. (*Compare* Doc. 59-1, p. 33, *with* Doc. 59-1, pp. 48; *see also* Doc. 59-14, pp. 62–70.) So OPM was required to consider the limitations regardless of whether the procedure fell under Section 5(a) or 5(b).

Nail's treatment was medically necessary or experimental to treat prostate cancer. (*See* Docs. 59-5, 59-10.) When both reviewers found that the treatment was not medically necessary and was experimental, GEHA denied Nail coverage. (*See* Docs. 59-6, 59-11.) With that administrative record, OPM obtained its own independent review from a board-certified oncologist, who also concluded that the HIFU treatment for prostate cancer required further testing and should be considered experimental based on the Plan Brochure's definitions.[5] (Doc. 59-2.)

Yet, despite that record, Nail contends that OPM's decision should be set aside because it did not consider the contrary literature and evidence he provided. (Doc. 62, pp. 8–9.) That argument fails. To support his request for coverage approval, Nail offered a Letter of Medical Necessity from Dr. Scionti, who stated that he had performed the HIFU treatment to selected patients with localized prostate cancer for the past ten years. (Doc. 59-3, p. 2.) Further, Nail cited various studies and literature that found HIFU an effective treatment for prostate cancer. (Doc. 59-7, pp. 2–4; Doc. 59-9, pp. 1–2; Doc. 59-13, pp. 4–7.) But even though Nail provided GEHA and OPM with materials that support finding the HIFU procedure medically necessary and not experimental to treat prostate cancer, he failed to demonstrate that OPM acted in an arbitrary or capricious manner when it relied on the evidence in the record that justified finding the HIFU procedure experimental. Contrary to Nail's contention, it cannot be said that OPM "entirely failed

---

[5] To the extent Nail argues that a conflict of interest exists between GEHA and OPM and their respective independent medical reviewers, the Court finds no evidence in the record to support that assertion. (*See* Doc. 59, ¶¶ 22, 26, 36; *see also* Doc. 62, p. 17.)

to consider" a part of his claim merely because OPM based its decision on other credible and persuasive evidence.⁶ (*See* Doc. 62, pp. 4–5.) So the Court finds that OPM's decision to deny Nail's coverage claim as experimental was based on a proper consideration of the relevant factors and record evidence.

   C.   **Rational Connection**

Next, the Court considers whether there was a rational connection between the facts and OPM's coverage decision. OPM contends that it articulated a rational connection between the record evidence and its coverage decision. (Doc. 62, pp. 16–17). OPM explained in its denial letter it could not direct GEHA to authorize benefits because the HIFU procedure was considered experimental to treat prostate cancer. (Doc. 59-2.)

In reaching its conclusion, OPM relied on the opinion of its independent medical reviewer and the Plan Brochure's definition of an experimental procedure. (*Id.*; *see also* Doc. 59-1, p. 106.) Although, Nail quarrels with OPM's alleged failure to consider Section 5(b) of the Plan Brochure, OPM's decision was explicitly based on the Plan Brochure's stated exclusions. *See Muratore v. U.S. Office of Pers. Mgmt.*, 222 F.3d 918, 924 (11th Cir. 2000) (finding that "OPM did not act arbitrarily and capriciously when it determined that

---

⁶ *See also Campbell v. U.S. Office of Pers. Mgmt.*, 384 F. Supp. 2d 951, 957 (W.D. Va. 2004) (concluding that even though OPM reached a conclusion opposite Plaintiff's doctors' recommendation, the decision was not arbitrary and capricious because it was "based on a thorough review of [Plaintiff]'s file and the recommendation of OPM's own medical consultant"); *Pellicano v. Office of Pers. Mgmt., Ins. Operations*, 8 F. Supp. 3d 618, 636 (M.D. Pa. 2014) (finding that OPM's decision was not arbitrary and capricious even though it was contrary to Plaintiff's "second, plausible interpretation").

the specific provision for speech therapy in the medical benefits section, instead of the open-ended mental conditions section, controls coverage for speech therapy"). Further, the record is filled with evidence, including the assessment of several independent medical reviewers, supporting the determination that the HIFU procedure is experimental in the treatment of prostate cancer. (*See, e.g.*, Doc. 59-2.) There is no evidence that OPM ignored or irrationally construed any evidence. Rather, OPM offered a reasonable interpretation of the Plan Brochure and its coverage decision was properly based on the findings of its independent medical reviewer. (Doc. 59-2.)

With that, the Court finds OPM's decision was rationally connected to the facts and the Court must defer to OPM's expertise. *Tackitt*, 758 F.2d at 1575. OPM is well-versed in the Plan Brochure's language and carefully considered the record evidence. The Court will not substitute its judgment for that of OPM's. *See Motor Vehicle*, 463 U.S. at 30. So the Motion is due to be denied.

### IV. CONCLUSION

It is **ORDERED AND ADJUDGED**:

1. Defendant U.S. Office of Personnel Management's Motion for Summary Judgment (Doc. 62) is **GRANTED**.

2. The Clerk is **DIRECTED** to:

    a. Enter judgment for Defendant U.S. Office of Personnel Management and against Plaintiff Danny Nail;

    b. Terminate any other pending motions and deadlines; and

c. Close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 11, 2019.



ROY B. DALTON JR.
United States District Judge

Copies:
Counsel of Record